Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| PALMIRA O'NEILL GONZÁLEZ<br><br>Parte Recurrida<br><br>v.<br><br>MUNICIPIO DE GUAYNABO<br><br>Patrono<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Parte Recurrente | KLRA202400481 | Revisión administrativa procedente de la Comisión Industrial de Puerto Rico<br><br>Caso C.I. Núm.: 11-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-02<br><br>Caso C.F.S.E. Núm.: 11-64-01940-7<br><br>Sobre: Tratamiento y Mayor Incapacidad, Condición Emocional |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de enero de 2025.

Comparece el Administrador de la Corporación Fondo del Seguro del Estado (CFSE o parte recurrente) y solicita que revoquemos la resolución emitida por la Comisión Industrial el 11 de julio de 2024, notificada el 1 de agosto de 2024. Mediante esta, la Comisión Industrial le reconoció a la Sra. Palmira O'Neill González (Sra. O'Neill) el derecho a recibir los beneficios establecidos en la Ley Núm. 45 del 18 de abril de 1935[1], para casos de Incapacidad Total Permanente, por condición emocional.

Examinado el recurso que nos ocupa, la totalidad del expediente ante nuestra consideración y el estado de derecho aplicable, se confirma la resolución recurrida.

---

[1] *Ley del Sistema de Compensaciones por Accidentes de Trabajo*, 11 LPRA sec. 1 *et seq.*, según enmendada.

Número Identificador

SEN2025_____

I.

El 4 de noviembre de 2010, la Sra. O'Neill, quien laboraba como Contadora para el Municipio de Guaynabo, presentó una reclamación ante la CFSE en la que alegó que sufrió una enfermedad ocupacional. Según el *Informe Patronal*[2] presentado, la Sra. O'Neill alegó "fuertes dolores desde el cuello hasta el área sacrolumbar, calambres y adormecimiento en hombros, brazos, manos, muñecas y cabeza. Pérdida de fuerza en brazo y muslos. **Ansiedad, depresión e insomnio.**" La Sra. O'Neill fue evaluada y recibió tratamiento para atender su condición emocional, el cual incluyó evaluación por trabajo social, por la clínica emocional y la unidad interdisciplinaria.

El 2 de noviembre de 2011, la CFSE emitió *Decisión del Administrador sobre Tratamiento Médico.*[3] Respecto a las condiciones orgánicas alegadas, la CFSE dio de alta definitiva a la Sra. O'Neill con incapacidad en cuanto a algunas de las condiciones y sin incapacidad en cuanto a otras[4]. No obstante, la CFSE dejó abierta la reclamación por condición emocional.

El 25 de enero de 2012, notificada el 27 de enero de 2012, la CFSE otorgó las incapacidades por condiciones orgánicas, y emitió la *Decisión del Administrador pago Máximo IPP.*[5]  En esta, el Administrador de la CFSE reconoció una incapacidad de cinco por ciento (5%) a la Sra. O'Neill por el esguince lumbosacral, radiculopatía LT S1 bilateral y 5% FFG cervical. Además, el Administrador determinó que la compensación por las

---

[2] Véase, Exhibit I del Apéndice del recurso.
[3] Véase, Exhibit III del Apéndice del recurso.
[4] En específico, la Sra. O 'Neill fue dada de alta *con incapacidad* en cuanto a las siguientes condiciones:

> ESGUINCE CERVICAL Y LUMBOSACRAL ORGÁNICO PRIMARIO RELACIONADO CON INCAPACIDAD 88.001 ESGUINCE HOMBRO DERECHA E IZQUIERDA ORGÁNICO PRIMARIO RELACIONADO 18/19.001 SIN INCAPACIDAD ESGUINCE AMBAS MANOS ORGÁNICO PRIMARIO RELACIONADO SIN INCAPACIDAD 24/25.001.

Por otro lado, la Sra. O 'Neill fue dada de alta *sin incapacidad* en cuanto a las siguientes condiciones: esguince de manos bilateral, *Carpal Tunnel Syndrome* bilateral (CTS).
[5] Exhibit IV del Apéndice del recurso.

incapacidades antes descritas ascendía a $12,000.00. Debido a que dicha suma era la cantidad máxima contemplada en el Art. 5 de la Ley Núm. 45-1935, supra, y la Sra. O'Neill ya había recibido el máximo de compensación dispuesto por ley, el Administrador resolvió que no procedían pagos adicionales por la incapacidad adjudicada.

Respecto a la condición emocional, la CFSE emitió *Decisión del Administrador sobre Tratamiento Médico*[6] el 5 de junio de 2012. En esta, dio a la Sra. O'Neill de alta con incapacidad por la condición "emocional secundario relacionado con incapacidad 75.027". Luego, el 17 de julio de 2012, notificada el 23 de julio de 2012, la CFSE emitió la *Decisión del Administrador, Pago Máximo de IPP* en la que otorgó un **cinco (5%) por ciento de incapacidad emocional** a la Sra. O'Neill. Al igual que en la decisión sobre las condiciones orgánicas, el Administrador resolvió que no procedían pagos adicionales de compensación por la condición emocional, pues la Sra. O'Neill ya había recibido el máximo de compensación permitido por ley.

Insatisfecha con la decisión del Administrador de la CFSE, la Sra. O'Neill acudió vía recurso apelativo ante la Comisión Industrial (la Comisión). Luego de varios y complejos trámites apelativos, la Comisión Industrial celebró una vista médica el 21 de abril de 2016. Celebrada la vista, la Comisión Industrial refirió[7] a la Sra. O'Neill con el Dr. Víctor M. Santiago Noa, psiquiatra consultor de la Comisión, para evaluación y recomendaciones en cuanto a tratamiento o mayor incapacidad por condición emocional. Una vez presentado el informe del Dr. Santiago Noa, la Comisión señalaría la continuación de la vista médica.

---

[6] Exhibit V del apéndice del recurso.
[7] Exhibit VIII del apéndice del recurso.

El 31 de mayo de 2016, el Dr. Santiago Noa evaluó a la Sra. O'Neill y el 3 de junio de 2016, presentó *Evaluación Psiquiátrica*[8] a la Comisión. En esta, el Dr. Santiago Noa realizó un diagnóstico relacionado de depresión mayor severa con rasgos psicóticos y recomendó una incapacidad estimada de **veinte (20%) por ciento adicional.**

El 15 de noviembre de 2016, la Comisión Industrial celebró la continuación de la vista médica. A la luz de la evaluación del Dr. Santiago Noa, la Comisión resolvió aumentar el porciento de incapacidad a un 25% de las funciones fisiológicas generales por condición emocional y que se descontara el monto correspondiente a la compensación pagada previamente. También, la Comisión dispuso que se hiciera efectivo a la Sra. O'Neill la compensación correspondiente en la forma que dispone la ley. La Resolución de la vista se notificó el 13 de diciembre de 2016.

Inconforme con la determinación de la Comisión, la Sra. O'Neill presentó una apelación y solicitó una vista pública[9]. En síntesis, esta expresó su inconformidad con las recomendaciones del Dr. Santiago Noa en su informe. Por ello, solicitó nueva vista pública y que se citara al Dr. Santiago Noa.

Luego de más de tres años y varios incidentes procesales, el 22 de abril de 2019 la Comisión ordenó la reapertura de los procedimientos y refirió el caso para señalamiento de vista pública.[10] Así las cosas, el 7 de enero de 2020, la Sra. O'Neill presentó *Moción Solicitando Señalamiento de Vista,* en la que reiteró su solicitud de que se señalara la vista pública solicitada. No obstante, no fue hasta el 5 de octubre de 2023, que la Comisión Industrial citó a la Sra. O'Neill a una evaluación por especialista ante el Dr. Juan G. Batista

---

[8] Exhibit VIII del apéndice del recurso.
[9] Véase, *Apelación y Solicitud de Vista Pública con Perito Médico,* Apéndice XI del recurso, pág. 30.
[10] Exhibit XIV del apéndice del recurso, pág. 34.

Reyes para "tratamiento y mayor incapacidad, condición emocional".[11] Así, el 30 de octubre de 2023, la Sra. O'Neill fue evaluada por el Dr. Batista Reyes, quien rindió su *Informe de Evaluación Psiquiátrica* el 31 de octubre de 2023.[12] En este, hizo diagnóstico de trastorno adaptativo con estado de ánimo mixto. En el *Eje IV* expuso que la paciente presentaba "problemas de salud, problemas económicos y problemas laborales". En virtud de lo anterior, el Dr. Batista Reyes recomendó "un 10% de mayor incapacidad por condición emocional a descontar un 5% ya otorgado", y que la Sra. O'Neill continuara tratamiento psiquiátrico privado. En la conclusión de su informe, el Dr. Batista Reyes, destacó lo siguiente: "Los diagnóstico (sic) así como las opiniones pueden variar de surgir información adicional que así lo amerite[,] al igual que [e]l % de incapacidad." El 6 de diciembre de 2023, la Sra. O'Neill presentó *Moción Solicitando Señalamiento de Vista.*

El 24 de mayo de 2024, la Comisión Industrial celebró la Vista Pública. En esta estuvo presente la Sra. O'Neill, el Administrador de la CFSE y el Dr. Batista Reyes. El 11 de julio de 2024, la Oficial Examinadora de la Comisión emitió *Informe[13]*, al cual se le incorporó la transcripción de la vista pública. La Oficial Examinadora emitió las siguientes determinaciones de hechos:

1. La lesionada presentó una reclamación el día 3 de noviembre de 2010, en la que alegó dolores en el cuello hasta la región sacrolumbar, calambres y adormecimiento en hombros, brazos, cabeza, manos y muñecas. **También hizo la alegación de sentir ansiedad, depresión e insomnio, según consta en el Informe Patronal.**

2. La lesionada se desempeñaba como contable en el Municipio de Guaynabo por espacio de nueve años.

[…]

---

[11] Exhibit XV apéndice del recurso.
[12] El informe del Dr. Batista Reyes fue presentado a la Comisión Industrial el 3 de noviembre de 2023. Véase, Exhibit XVII, págs. 37-39.
[13] Exhibit XIX, págs. 43-71 del apéndice del recurso.

13. En la Resolución de vista médica notificada el 4 de octubre de 2016, se refirió para evaluación por el psiquiatra perito de este Organismo.

14. Fue evaluada por el Dr. Víctor Santiago Noa, psiquiatra, el 31 de mayo de 2016. Esta evaluación fue realizada en fecha más cercana al momento en que la parte apelante presentó su caso ante la CFSE.

15. En la Resolución de vista médica notificada el 13 de diciembre de 2016, **aumentó a un veinticinco porciento (25%) de incapacidad por la condición de depresión mayor severa con rasgos psicóticos. Indica la Resolución que el doctor Santiago Noa recomendó un veinte porciento de incapacidad por la condición emocional[,] no obstante, la parte dispositiva de la misma aumentó a un veinticinco porciento (25%) de incapacidad de las funciones generales.**

16. **El doctor Santiago Noa fue un perito psiquiatra que ya no presta servicios por contrato a este Organismo.**

17. **El Informe Pericial preparado por el doctor Santiago Noa, ni copia de la Resolución de vista médica en la que se recogen el aumento de incapacidad por la condición emocional le fueron provistas al perito psiquiatra cuando la lesionada fue enviada a evaluación.**

18. El perito psiquiatra presente en la vista pública, Dr[.] Juan Batista Reyes, examinó a la lesionada el 30 de octubre de 2023.

19. **El doctor Batista Reyes, carecía al momento de la evaluación de documentos importantes para tener un cuadro claro de las incapacidades otorgadas a la parte apelante.**

20. **El informe del perito psiquiatra partió de una premisa errónea pues solo tenía un documento en el que indicaba que la parte apelante tenía un cinco de incapacidad parcial permanente.**

21. En la vista pública presente fue cuando el doctor Batista Reyes advino en conocimiento de que la lesionada tenía recogida en vista médica un veinticinco porciento (25%) de incapacidad por la condición emocional.

22. Según la decisión denegando la incapacidad total por factores, notificada el 5 de junio de 2015, **la apelante tenía un sesenta y nueve porciento (69%) de incapacidad por las condiciones orgánicas. En esa decisión no se tomó en cuenta ni siquiera el cinco por ciento (5%) de incapacidad que la propia CFSE le reconoció a la parte apelante, mucho menos tomó**

**en consideración el aumento de incapacidad producto de la vista médica celebrada en la Comisión Industrial.**

23. **Ante esta realidad el perito psiquiatra corrigió su impresión diagnóstica e indicó que la parte apelante ameritaba una incapacidad total y permanente.**

24. **En el testimonio vertido para récord el perito psiquiatra indicó que encontró a una lesionada con ánimo deprimido, con concentración y atención disminuidos, afecto restringido, ansiedad, memoria disminuida, juicio e introspección pobre.**

25. **Esta condición mental se debe a las condiciones físicas que tiene la apelante por lo que por eso le recetó Cymbalta ya que es un antidepresivo que trabaja muy bien contrarrestando el dolor y a la vez la depresión.**

26. **Según el perito médico[,] esta depresión será permanente y los rasgos psicóticos de la depresión no están presente[s] todo el tiempo pero, pueden exacerbarse en cualquier momento ante un estresor externo. Ello puede ocurrir en un lapso corto después de que esté expuesta a ese estresor.**

27. **La condición mental de la lesionada constituye un riesgo para ella y para las personas que pueda tener alrededor debido a la depresión y a la posibilidad de una psicosis que se desate en cualquier momento ante un estresor. Lo recomendado para la lesionada es que lleve una vida tranquila por lo que indicó que no puede estar en un ambiente de trabajo con las demandas de productividad, tiempo y horario que ello conlleva.**

28. **La CFSE compareció a la vista pública sin su expediente y sin perito médico lo cual no está bajo el control de la lesionada ni de la Comisión Industrial.**

(Negritas nuestras.)

En vista de las anteriores determinaciones, la Oficial Examinadora expuso lo siguiente:

Han pasado catorce (14) años desde que la apelante hizo sus primeras alegaciones ante la Aseguradora, las que desde el principio incluyeron el aspecto emocional con un cuadro de depresión y ansiedad además de las condiciones orgánicas de las que argumentó la CFSE. También partimos de la premisa que la CFSE no hace un análisis holístico del paciente que busca sus servicios. **No obstante, al hacer nuestra recomendación no tomaremos en cuenta las condiciones físicas de la apelante más allá de lo discutido en la vista pública por el perito psiquiatra, es decir, c[ó]mo inciden en el estado anímico de la lesionada las condiciones orgánicas que tiene.** (Negritas nuestras).

Así, al amparo del Artículo 3(d) de la Ley 35-1935, supra, la Oficial Examinadora, luego de evaluar la totalidad del expediente, concluyó que la Sra. O'Neill tiene una condición mental de depresión severa con rasgos psicóticos la cual es incurable conforme expresado por el Dr. Batista Reyes en la vista pública. Señaló que la Sra. O'Neill lleva catorce (14) años con dichos síntomas y episodios de psicosis, lo que es uno de los requisitos para que una enfermedad sea considerada como incapacidad total y permanente. Por ello, coligió que el cuadro clínico de la Sra. O'Neill es de "suficiente envergadura para que el perito ante la evidencia que no se le había provisto revisara su opinión inicial y corrigiera su informe". Por tal razón, la Oficial Examinadora concluyó que el testimonio del Dr. Batista Reyes fue claro y contundente de acuerdo con toda la evidencia habida en el expediente. En virtud de lo anterior, la Oficial Examinadora recomendó que se acogiera la recomendación de incapacidad total y permanente por la condición emocional, por esta ser una severa y permanente. Como fundamento adicional para su recomendación, resaltó que, conforme resuelto por el Tribunal Supremo de Puerto Rico, ante un testimonio claro, la Comisión debe resolver a tenor con la prueba pericial cuando esta es clara y, en caso de no serlo, el organismo puede adoptar su propio criterio y evaluar la totalidad del expediente y llegar a sus propias conclusiones. Aplicado lo anterior al caso de la Sra. O'Neill, la Oficial Examinadora concluyó que, ante su cuadro permanente de depresión mayor severa con rasgos psicóticos, esta no puede desempeñarse en una labor remunerativa, cinco días a la semana, con la demanda y estrés que conlleva el mundo laboral y que resolver lo contrario pondría en peligro a la Sra. O'Neill y cualquier persona a su alrededor.

En igual fecha, y notificada el 1 de agosto de 2024, la Comisión Industrial emitió la *Resolución* recurrida, en la que, luego

de examinados los autos y la evidencia que constaba en los mismos, acogió el informe de la Oficial Examinadora y le reconoció a la Sra. O'Neill el derecho de recibir los beneficios establecidos en la Ley 45-1935, *supra,* para casos de incapacidad total permanente. A tenor de ello, le ordenó a la CFSE hacer efectivo a favor de la Sra. O'Neill el pago de la compensación según dispuesto por ley.

Inconforme, la CFSE acude ante nos y le imputa a la Comisión Industrial los siguientes señalamientos de error:

1. Erró la Comisión Industrial al determinar que la parte obrera es meritoria de una Incapacidad Total Permanente por condición emocional.

2. Erró la Comisión Industrial al desviarse del Informe Evaluativo emitido por el actual psiquiatra consultor, Dr. Batista Reyes y sustituirlo por el Informe evaluativo emitido por un psiquiatra consultor no disponible, el Dr. Santiago Noa.

3. Erró la Comisión Industrial al considerar y basar su determinación en el Informe Evaluativo del psiquiatra consultor Dr. Santiago Noa, doctor que no estuvo disponible para ser interrogado y/o contrainterrogado sobre los hallazgos y determinaciones de su evaluación, por lo que la misma no es admisible a los fines de prueba evidenciaria confiable.

4. Erró la Comisión Industrial al considerar y validar como otorgada y definitiva una Incapacidad por Condición Emocional que está siendo revisada en un proceso apelativo de vista pública ante dicho foro, por lo que la misma nunca advino final y firme.

5. Erró la Comisión Industrial al descansar sus hallazgos y conclusiones en alegada prueba médica emocional que no surge del expediente m[é]dico de la CFSE, ni de la Comisión Industria[l], y que no fue presentada por la parte obrera o desfilada durante la vista pública.

6. Erró la Comisión Industrial al basar su determinación en el vago e impreciso informe evaluativo y en el especulativo testimonio emitido por su psiquiatra consultor, Dr. Batista Reyes.

Puesto que los señalamientos de error cuestionaban la apreciación de la prueba, el 12 de septiembre de 2024, emitimos resolución para que la CFSE informara el método de reproducción de la prueba oral. Así las cosas, el 13 de noviembre de 2024, la CFSE presentó *Moción en Cumplimiento de Orden,* en la que incluyó, entre otros, una certificación de la Comisión Industrial que acredita que

el informe del oficial examinador contiene la transcripción *ad verbatim* de lo acontecido en la vista pública.

Evaluado el escrito presentado, así como la certificación emitida por la Comisión Industrial, acogemos la transcripción según presentada y así acogida, resolvemos.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[14] Así, pues, al realizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de las agencias sobre las cuestiones que haya tenido o tenga ante sí. Por lo tanto, en el descargo de su función deberá diferenciar entre los asuntos de discernimiento estatutario o las cuestiones de especialización administrativa.[15]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[16] Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad.[17] Por evidencia sustancial se entiende "aquella evidencia

---

[14] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[15] *Rebollo v. Yiyi Motors,* 161 DPR 69, 78 (2004).
[16] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[17] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). Véase, además, Sec. 4.5 de la LPAU, 3 LPRA § 9675.

relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[18]

Por lo tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[19] En fin, el tribunal debe limitar su intervención a evaluar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[20] En resumen, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el **peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables**.[21] De no lograrlo, el tribunal respetará las determinaciones de hechos y no sustituirá el criterio de la agencia por el suyo.[22]

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos.[23] Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia".[24] Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones

---

[18] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).
[19] *Otero v. Toyota*, supra, pág. 728.
[20] *Íd.*
[21] *Rebollo v. Yiyi Motors*, supra, pág. 77; *Misión Ind. P.R. v. J. P.*, 146 DPR 64, 131 (1998); *OCS v. Universal*, supra, págs. 178-179; *González Segarra v. CFSE, supra,* págs. 276-278.
[22] *González Segarra et als. v. CFSE*, supra.
[23] Sec. 4.5 de la LPAU, 3 LPRA § 9675.
[24] *Otero v. Toyota*, supra, pág. 729.

de política pública o en la apreciación de la prueba.[25]  Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa".[26]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[27]

**B.**

La Ley Núm. 45 del 18 de abril de 1935, conocida como *Ley del Sistema de Compensaciones por Accidentes del Trabajo,* es una legislación de carácter remedial, que creó un sistema de seguro compulsorio y exclusivo para compensar a los obreros y empleados que sufran lesiones, se inutilicen, o mueran como consecuencia de accidentes ocurridos en sus trabajos o de enfermedades ocupacionales.[28] Algunos de esos remedios incluyen asistencia médica y compensación, en forma de dietas, durante una incapacidad transitoria, y compensación adicional por incapacidad parcial permanente o incapacidad total permanente.[29] Para que un accidente sea compensable al amparo de esta legislación, el mismo

---

[25] *Íd.*

[26] *Íd.*

[27] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[28] 11 LPRA sec. 1 *et seq.*; *Rodríguez Rosa v. Méndez & Co.,* 147 DPR 734, 739 (1999).

[29] 11 LPRA § 3.

tiene que surgir a consecuencia de cualquier acto o función del obrero; que sea inherente a su trabajo o empleo y que ocurra en el curso de éste.[30]

Con el fin de implementar el sistema de compensación recogido en la Ley 45, se crearon dos instrumentalidades importantes: la Corporación del Fondo del Seguro del Estado y la Comisión Industrial.[31] El Fondo es el organismo con jurisdicción primaria en el que se ventila la elegibilidad de un obrero para recibir los beneficios de la Ley 45. Esa agencia se encarga de investigar las reclamaciones por accidentes del trabajo, de ofrecer rehabilitación a través de servicios médicos y del pago de compensación por incapacidad parcial o total.[32]

Mientras, la Comisión Industrial es un organismo esencialmente apelativo, que adjudica y revisa las decisiones del Administrador del Fondo y que, a su vez, ejerce funciones de naturaleza cuasi judicial y cuasi tutelar. Su propósito principal es investigar y resolver todos los casos de accidentes en los que el Administrador del Fondo y el obrero o empleado lesionado no lleguen a un acuerdo respecto a la compensación.[33] A tenor de esa facultad cuasi judicial, se ha reconocido que la Comisión Industrial es la encargada de dirimir, en primera instancia, las contiendas entre el Administrador del Fondo y los obreros o sus beneficiarios, por ser el árbitro final de los derechos que cobijan a estos últimos en la esfera administrativa.[34]

## C.

Es sabido que la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico es el estatuto que dirige los

---

[30] *Hurtado v. Osuna*, 138 DPR 801, 805 (1995); *Admor., FSE v. Comisión Industrial*, 101 DPR 56, 58 (1973).
[31] 11 LPRA § 8.
[32] *Agosto Serrano v. FSE*, 132 DPR 866, 874 (1993).
[33] 11 LPRA § 8; *Rivera González v. FSE*, 112 DPR 670, 674 (1982).
[34] *Agosto Serrano v. FSE*, supra, págs. 875-876.

procedimientos administrativos que se conducen en las agencias administrativas. Con relación a ello, en su sección 3.13 (e), dispone que "las Reglas de Evidencia no serán aplicables a los procedimientos administrativos[35], pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento." Estas normas tienen como propósito liberar los procedimientos administrativos de las "trabas procesales de los tribunales de justicia".[36] Además, cumple con el fin de promover el que los mismos se lleven a cabo de manera ágil y sencilla.[37] Del mismo modo, debe mantenerse presente que el fin de cualquier procedimiento adjudicativo, ya sea judicial o administrativo, es la búsqueda de la verdad y de lograr la justicia para las partes.[38]

Por ello, las Reglas de Evidencia buscan viabilizar ese propósito, no obstaculizarlo, ya que el fin último de las mismas es el descubrimiento de la verdad en todos los procedimientos adjudicativos.[39] Por lo que la norma referente a la interpretación flexible de las reglas de evidencia es mucho más liberal cuando se trata de la aplicación del derecho probatorio a los procesos administrativos.[40] Bajo esta premisa, en los procesos adjudicativos administrativos debe prevalecer la flexibilidad y el carácter informal para que toda información pertinente a la controversia pueda llegar al conocimiento del juzgador de hechos.[41] En conclusión, se puede "afirmar que si bien en las vistas administrativas, de ordinario, no aplican las reglas o principios de evidencia, en aquellas ocasiones

---

[35] Sec. 3.13(e), Ley 38-2017, 3 LPRA 9653(e). Véase, *Industria Cortinera Inc. v. PRTC*, 132 DPR 654, 660 (1993); *Pérez Rodríguez* v. *P.R. Park Systems, Inc.*, 119 DPR 634, 639-40 (1987); *Berríos* v. *Comisión de Minería*, 102 DPR 228, 229-30 (1974).
[36] *Martínez* v. *Tribunal Superior*, 83 DPR 717, 720 (1961).
[37] *López Vives* v. *Policía de Puerto Rico*, 118 DPR 219, 231 (1987); *López Santos* v. *Asoc. de Taxis de Cayey*, 142 DPR 109, 113 (1996).
[38] *Pérez Rodríguez* v. *P.R. Park Systems, Inc.*, supra.
[39] *J.R.T.* v. *Autoridad de Comunicaciones de Puerto Rico*, 110 DPR 879, 884 (1987).
[40] *Íd.*
[41] *Íd.*

en que se utilicen las mismas se interpretarán con mayor liberalidad que en el escenario de un trámite judicial".[42]

Por otro lado, la Sección 4.5 de la LPAU dispone que la revisión judicial de las determinaciones finales de las agencias administrativas se circunscribe a evaluar: (1) si el remedio concedido por la agencia es el adecuado; **(2) si las determinaciones de hechos están sostenidas por la evidencia sustancial que surge de la totalidad de expediente;** y (3) si las conclusiones de derecho son correctas, para cuyo escrutinio no tenemos limitación revisora alguna.[43] (Énfasis nuestro).

Ello no requiere que a la luz de la prueba que obre en autos la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Pero tampoco se considerará como correcta una determinación sostenida por un mero destello de evidencia.[44] El criterio rector en estos casos será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad.[45]

Ahora bien, respecto a la prueba documental o pericial admitida en la vista adjudicativa, este foro revisor está en igual posición que la agencia para evaluarla de manera independiente. Con relación a la prueba testifical, solo procede nuestra intervención con la apreciación y la adjudicación de credibilidad de los testigos en los casos en que el análisis integral de la prueba cause insatisfacción o intranquilidad de conciencia tal que conmueva nuestro sentido básico de justicia.[46]

En síntesis, y en armonía con las normas reseñadas, debemos limitarnos en este caso a evaluar si la determinación final impugnada es razonable, a base de la evidencia sustancial

---

[42] *OEG* v. *Rodríguez*, 159 DPR 98, 113 (2003)
[43] 3 LPRA sec. 2175.
[44] *Íd.*
[45] *Íd.; Fuertes y otros v. A.R.P.E.*, 134 DPR 947, 953 (1993).
[46] *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986).

contenida en el expediente que tenemos ante nos o si es tan irrazonable y arbitraria que constituye un claro abuso de discreción administrativa.

D.

El Reglamento Núm. 7361 de 21 de mayo de 2007 de la Comisión, conocido como las *Reglas de Procedimiento de la Comisión Industrial de Puerto Rico*[47] (Reglamento Núm. 7361) –vigente al momento de determinación de incapacidad de la Sra. O'Neill– fue adoptado en virtud del Artículo 9 de la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, supra, la *Ley de Procedimiento Administrativo Uniforme,* supra*,* y otros estatutos. Dicho reglamento aplica de manera uniforme a todos los asuntos sometidos ante la consideración de la Comisión y se interpretará de tal forma que garantice una solución justa, rápida y económica. Este también dispone que los procedimientos ante la Comisión serán sencillos y sumarios. En virtud de lo anterior, la Regla 3 del Reglamento 7361 establece que las Reglas de Procedimiento Civil y los principios fundamentales de las Reglas de Evidencia, se aplicarán de manera supletoria, siempre que no resulten inconsistentes con la naturaleza de los procedimientos ante la Comisión.

Más adelante, la Regla 16 establece lo relativo a la vista médica. En específico, esta dispone lo siguiente:

> Una vez presentado el escrito de apelación en la Secretaria se celebrará una vista médica, cuando lo que está en controversia es una Decisión del Administrador sobre un aspecto médico. La vista médica será dirigida por un médico de la Comisión Industrial, quien revisará los aspectos médicos planteados conjuntamente con un médico de la Corporación del Fondo del Seguro del Estado. El obrero podrá comparecer acompañado con un médico de su selección. Cualquier parte que no esté conforme con el resultado de la vista médica podrá solicitar la celebración de una vista pública dentro del término de treinta (30) días,

---

[47] El 26 de junio de 2023, entraron en vigor las nuevas "Reglas de Procedimiento de la Comisión Industrial de Puerto Rico", Reglamento Núm. 9464 de 26 de mayo del 2023, no obstante, el reglamento aplicable al caso ante nos es el vigente al momento de los hechos (Reglamento 7361).

contados a partir de la fecha de notificaci6n de la resolución de vista médica.

Por su parte, la Regla 16.3, inciso 16, establece lo siguiente respecto a los deberes y funciones de los médicos durante la vista médica:

> En la situación en que sea estrictamente necesario referir al apelante para evaluación por un Médico Especialista de la Comisión, deberá quedar así establecido en las recomendaciones de la resolución de vista médica. Será necesario que previo al referido, el apelante haya sido anteriormente evaluado por un especialista del Asegurador. Se especificará si la evaluación y recomendaciones serán para tratamiento, mayor incapacidad o para relación causal.

Posteriormente, la Regla 18 establece los procedimientos en cuanto a los referidos a médicos especialistas. En específico, esta dispone que, en caso de que se requiera asesoramiento de un médico especializado para la solución definitiva de una cuestión médica en controversia, se referirá el caso al médico especialista que corresponda para que evalúe o reevalúe al apelante, examine la evidencia que obra en el expediente y emita opinión pericial, de conformidad a la consulta solicitada. El médico especialista rendirá un informe sobre los hallazgos de su evaluación. La opinión del médico especialista gozará de la presunción de corrección en cuanto a sus recomendaciones.

Respecto al contenido del informe médico, la Regla 18 establece que este deberá contener, entre otros, los hallazgos clínicos detallados, impresión diagnóstica y recomendación médica con respecto al asunto encomendado. En cuanto a los casos psiquiátricos se incluirá el *Multiaxial Diagnosis* y los cinco (5) ejes relacionados con la condición mental y funcional del apelante. También que los casos de tratamiento o mayor incapacidad incluirán los porcientos de incapacidad que previamente se le han reconocido al apelante, según se desprenda del récord y que se especificará si la incapacidad otorgada es independiente o a descontar de las previamente reconocidas; y si es por funciones

fisiológicas o funciones fisiológicas generales. Luego de esto, la Comisión procederá a emitir la resolución de vista médica, la cual contendrá la advertencia sobre el derecho a solicitar su revisión en una vista pública con las demás advertencias que correspondan.

Ahora bien, en lo atinente a la controversia ante nos, el Artículo 19.2 establece que las Reglas de Evidencia de Puerto Rico no aplicarán en los procedimientos ante la Comisión, excepto en el caso en que los principios fundamentales consagrados en ellas deban aplicarse para la obtención de una adjudicación justa, rápida, sencilla y económica. En cuanto a la presentación de la prueba, el Artículo 19.6 dispone que toda parte interesada en aportar prueba a su favor proveerá copia de la misma fotocopiada y debidamente identificada para ser entregada al Ponente y demás partes, y que el Ponente tendrá discreción para requerir que una parte someta, mediante moción, cualquier otra evidencia pertinente.

Es menester recordar que la Comisión Industrial es un organismo fundamentalmente adjudicativo y revisor y que es la Corporación del Fondo del Seguro del Estado el foro primario donde se dilucida si un obrero es elegible o no a los beneficios que establece la ley.[48]

Por último, la Regla 19.8 del Reglamento 7361, establece que, una vez el caso quede sometido para adjudicación, la Comisión redactará una resolución en la cual incluirá una relación sucinta de lo acontecido en la vista pública, determinaciones de hechos y conclusiones de derecho que sustenten la decisión recomendada. En caso de que el ponente de la vista pública sea un Oficial Examinador, este someterá un informe a la atención de los Comisionados, el cual se hará formar parte de la resolución final.

---

[48] *Rivera v. Fondo del Seguro del Estado,* 112 DPR 670 (1982).

III.

Adelantamos que discutiremos conjuntamente los señalamientos de error por estar estrechamente relacionados. En su recurso, la CFSE alega que la Comisión Industrial incidió al concluir que la Sra. O'Neill era meritoria de una incapacidad total permanente por condición emocional. En esencia, la CFSE sostiene que del testimonio de la Sra. O'Neill no surge cómo la condición emocional afectó o redujo su capacidad productiva. Añade que el testimonio pericial del Dr. Batista Reyes, fue vago, impreciso, guiado, insuficiente y altamente especulativo. Veamos.

Conforme surge de la resolución recurrida, la Oficial Examinadora, a la luz de la evidencia que obraba en el expediente administrativo, así como del testimonio del Dr. Batista Reyes, concluyó que la condición emocional de depresión severa con rasgos psicóticos que padece la Sra. O'Neill es incurable, por lo que dicha condición cumple con la clasificación de perturbaciones totales que sean incurables según establecida en el Artículo 3(d) de la Ley Núm. 45-1935, *supra.*[49] En apoyo de su recomendación, la oficial examinadora señaló que las condiciones físicas de la Sra. O'Neill no serían consideradas más allá de lo discutido por el Dr. Batista Reyes durante la vista y en cómo dichas condiciones orgánicas afectan el estado anímico de la lesionada. Sobre el particular, surge del testimonio del Dr. Batista Reyes que "esta paciente, la condición física que tuvo *y que tiene* la llevó a afectarse en una condición emocional hasta el día de hoy".[50] Posteriormente y, conforme surge de la transcripción de la vista, el Dr. Batista Reyes, luego de advenir

---

[49] Se considerará incapacidad total la pérdida total y permanente de la visión industrial de ambos ojos, la pérdida de ambos pies por el tobillo o más arriba; la pérdida de ambas manos por la muñeca o más arriba; la pérdida de una mano o un pie; **perturbaciones mentales totales que sean incurables**, y las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado, para hacer toda clase de trabajo u ocupaciones remunerativas. 11 LPRA § 3 (d).

[50] Véase, *Informe,* pág. 48, tercer párrafo del testimonio del Dr. Batista Reyes. (Bastardillas nuestras).

en conocimiento de la incapacidad previa que se le había otorgado a la Sra. O'Neill, abundó sobre lo siguiente:

> [E]lla tiene múltiples limitaciones, hasta tal punto que el Seguro Social la incapacitó... Se ve que es una paciente que se ve que está afectada emocionalmente, obviamente y que *esa afectación que tiene emocional eso probablemente no se va por ahora, porque ella muchos síntomas físicos* (sic), según ella misma mencionó y *según dice el expediente.* Así que, yo entiendo que esta es una paciente que está total y absolutamente incapacitada.[51]

Así, el Dr. Batista Reyes, luego de examinar el expediente, tuvo la oportunidad de hacer una relación sobre los efectos y consecuencias que tuvieron los síntomas físicos en la condición emocional de la Sra. O'Neill. Además, este pudo constatar las declaraciones hechas por la Sra. O'Neill y corroborarlas con la evidencia que obraba en el expediente. Conforme expusimos anteriormente, la opinión del médico especialista gozará de presunción de corrección en cuanto a sus recomendaciones. Fue a la luz de dichas recomendaciones que la oficial de la Comisión resaltó que la condición emocional de la Sra. O'Neill no consiste en un estado transitorio, pues la lesionada lleva catorce (14) años con síntomas de ansiedad y depresión con episodios de psicosis. Así, la oficial de la Comisión concluyó que, conforme expuesto en el Artículo 3(d), el criterio especificado para que las condiciones mentales puedan resultar en una incapacidad total es que dicha condición sea incurable. En virtud de ello, la oficial de la Comisión concluyó que, a la luz del expediente administrativo y, ante el hecho del padecimiento emocional de la Sra. O'Neill por espacio de catorce (14) años, su condición es meritoria de incapacidad total permanente. Por lo anterior, y en vista de que la CFSE no logró reducir el valor de la evidencia impugnada ni demostró la existencia de otra prueba que demostrara que la actuación de la Comisión no

---

[51] *Íd.,* pág. 49, testimonio del Dr. Batista Reyes.

estuvo basada en evidencia sustancial que obraba en el expediente, la decisión administrativa debe sostenerse. No se cometió el error señalado.

Por otro lado, las Reglas de Evidencia no aplicarán en los procedimientos ante la Comisión, excepto en el caso en que los principios fundamentales consagrados en ellas deban aplicarse para la obtención de una adjudicación justa, rápida, sencilla y económica. Ciertamente, el informe del Dr. Santiago Noa, el cual forma parte del expediente administrativo, goza también de una presunción de corrección que correspondía a la CFSE impugnar en su momento. No lo hizo. Durante el extenso trámite de la apelación de la Sra. O'Neill, la CFSE no impugnó el informe del Dr. Santiago Noa, así como tampoco discrepó los aumentos de porciento de incapacidad, así como las compensaciones otorgadas a la Sra. O'Neill. Lo anterior, surge de la transcripción incluida en el informe.[52] El pretender impugnar ahora un informe que obraba en el expediente desde el año 2016, y el cual goza de presunción de corrección, sería utilizar los principios de las reglas como obstáculo al principio de solución justa, rápida y económica de los procedimientos que se ventilan ante la Comisión. No se cometió el error señalado.

En vista de lo anterior, la CFSE no pudo demostrar que la agencia hubiera errado en la aplicación o interpretación de las leyes o los reglamentos aplicables, así como tampoco demostró que la agencia hubiera actuado de forma arbitraria, irrazonable o ilegalmente. La CFSE tampoco logró reducir el valor de la evidencia que impugnaba ni demostró la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. En virtud de lo anterior, y luego de un

---

[52] Véase, *Informe*, pág. 65, primer párrafo de la argumentación de la licenciada Hernández Benabé, representante legal de la Sra. O'Neill.

estudio sosegado del expediente, así como de la transcripción de la vista, concluimos que la determinación de la Comisión es razonable y fundamentada dentro del marco de su pericia y discreción administrativa, así como en la apreciación de la prueba que obra en el expediente y la desfilada durante la vista. En vista de lo anterior, no se cometieron los errores señalados, por lo que la decisión administrativa debe sostenerse.

IV.

Por los fundamentos anteriormente expuestos, se confirma la Resolución recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones